# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                       No. CR 07-1143  JB

MANUEL DELGADO-RUIZ,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed August 16, 2007 (Doc. 16).  The Court held a sentencing hearing on January 23, 2008.  The primary issues are: (i) whether Defendant Manuel Delgado-Ruiz' prior crime of  "felony menacing" is a crime of violence under U.S.S.G. § 2L1.2; and (ii) whether the Court should vary from the advisory Guideline sentence.  Because, under the categorical approach, the prior conviction is a crime of violence, the Court will overrule the objection to the 16-level enhancement.  The Court will, however, grant Delgado-Ruiz' request for a variance and sentence Delgado-Ruiz to 39-months imprisonment.

## FACTUAL BACKGROUND

On April 28, 2007, Delgado-Ruiz was arrested for illegally re-entering the United States. See Presentence Investigation Report ("PSR") ¶¶ 3, 4, at 3, disclosed on July 23, 2007.  After he was arrested, he was transported to the Columbus, New Mexico Border Patrol Station, where it was discovered that he had been convicted on May 18, 2001 of "Menacing-Real/Simulated Weapon," a crime of violence.  Id. ¶ 4, at 3.  The Colorado statute under which Delgado-Ruiz was charged and

for which he was convicted was Colorado Revised Statute § 18-3-206, "Menacing." Defendant's Sentencing Memorandum at 2, filed August 16, 2007 (Doc. 16)("Sentencing Memorandum").

The Colorado "Menacing" statute requires proof that "by any threat or physical action, [the defendant] . . . knowingly places or attempts to place another person in fear of imminent serious bodily injury." Colo. Rev. Stat. § 18-3-206. It states that menacing is a class 5 felony if committed "[b]y the use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon." Colo. Rev. Stat. § 18-3-206. According to the Criminal Complaint regarding his menacing conviction, Ruiz-Delgado "did by threat and physical action and by use of a deadly weapon, to wit: a beer bottle, unlawfully, feloniously, and knowingly did place and attempt to place the victim, Uriel Ramirez, in fear of imminent serious bodily injury." PSR ¶ 11, at 4-5. Additionally, on April 18, 2001, Delgado-Ruiz signed a written waiver and guilty plea, wherein he admitted to all of the elements set forth in the Criminal Complaint, which specifically defined his role in the criminal occurrence. See id. The PSR assessed a 16-level increase under U.S.S.G. § 2L1.2(b)(1)(A) because Delgado-Ruiz had been previously deported following a conviction for menacing, which the United States Probation Office ("USPO") categorized as a crime of violence in the PSR. See id.

Delgado-Ruiz' wife and children live in Ciudad Juarez, Chihuahua, Mexico. See PSR ¶ 28, at 9. He has been married to his wife for approximately 20 years, and they have three children together. See id. Their oldest son is 17, is a student, and works in an auto body shop; the two younger children, ages 11 and 8, are both students. See id. While Delgado-Ruiz is in the United States, his wife and children are supporting themselves by using money that Delgado-Ruiz left them and by using a monthly government stipend that his wife receives. See id.

The PSR indicates that Delgado-Ruiz committed no other crime when he violated federal

law by re-entering the United States after deportation.  See PSR at 1.  Delgado-Ruiz represents that

he returned to the United States only to support his family and to establish a life for them in

Colorado in the agricultural fields.  See PSR, Addendum, Letter to the Court from Delgado-Ruiz at

2 ("Letter"); Transcript of Hearing at 10:13-16, taken January 23, 2008 ("Tr.")(Nieto).[1]  Delgado-

Ruiz further states in a letter he sent to the Court that he had financial problems in Mexico and came

to the United States to obtain better employment.  See Letter at 2.

### PROCEDURAL BACKGROUND

On August 16, 2007, Delgado-Ruiz filed a Sentencing Memorandum to aid the Court in

determining an appropriate sentence.  See Sentencing Memorandum.  In the Sentencing

Memorandum, Ruiz states that he has no objections to the PSR, but then maintains that he disagrees

with the facts surrounding his prior conviction as specifically described in the PSR.  See id.

Delgado-Ruiz also objects to the Court enhancing his sentence using facts other than those available

in the charging documents.  See id. at 4.  Delgado-Ruiz' counsel further states that, if there are any

objections after a more thorough review of the PSR with Delgado-Ruiz, he will notify the Court as

soon as objections, if any, are known.  See id. at 1.

In his Sentencing Memorandum, Delgado-Ruiz requests that the Court consider not imposing

the 16-level enhancement and sentence him to a Guideline sentence of 10 to 16 months, which is

equivalent to a sentence for a criminal offense level 10 with a criminal history category III.  See

Sentencing Memorandum at 6-7.  In the alternative, Delgado-Ruiz requests that the Court vary by

a reasonable number of levels from the range set forth in the PSR, and to sentence him to the low

end of the appropriate Guideline range under 18 U.S.C. § 3553.  See id.  Delgado-Ruiz further

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

requests that the Court recommend that he serve his sentence at a minimum  -- or low -- security facility.  See id. at 7.

Delgado-Ruiz, in a letter to the Court, which was provided to the USPO contemporaneously with his Sentencing Memorandum, explains that his wife and three children are waiting for his return and need him for financial support.  See Letter at 2.  In his Sentencing Memorandum, Delgado-Ruiz' counsel represented that he would file a motion for continuance of sentencing to allow the United States, or the Court, more time to prepare these issues for sentencing if either the United States or the Court required more time than is available before the scheduled sentencing date. See Sentencing Memorandum at 6.

On August 30, 2007, the United States responded to Delgado-Ruiz' Sentencing Memorandum.  See United States' Response to Sentencing Memorandum Filed August 16, 2007, filed August 30, 2007 (Doc. 19)("United States' Response").  The United States attached to its response a copy of Delgado-Ruiz' written waiver and guilty plea paper in the state court case, including the admitted elements of the crimes against Delgado-Ruiz, for Criminal Trespass, Felony Menacing, and Third Degree Assault.  See United States' Response, Exhibit 1.  The element of force was specifically charged, and Delgado-Ruiz admitted this element, in the conviction for felony menacing in that it included  "by threat and physical action and by use of a deadly weapon, to wit: beer bottle, did unlawfully, feloniously and knowingly place and attempt to place Uriel Ramirez in fear of imminent serious bodily injury." United States' Response, Exhibit 1 at 3.

On October 5, 2007, the Honorable Judge Alan C. Torgerson, United States Magistrate Judge granted William Parnall's motion to withdraw as attorney for Delgado-Ruiz.  See Order by Judge Alan C. Torgerson granting Motion to Withdraw as Attorney, filed October 5, 2007 (Doc. 22).  On October 7, 2007 Arturo Nieto was appointed as Delgado-Ruiz' new counsel.  See Appointment of

-4-

Attorney Arturo B. Nieto for Manuel Delgado-Ruiz by Judge Richard L. Puglisi, filed October 7, 2007 (Doc. 23).

At the sentencing hearing on January 23, 2008, Delgado-Ruiz' new counsel, Mr. Nieto, stated that there was no factual objection to the PSR necessitating an evidentiary hearing. See Tr. at 3:14-19 (Nieto). At the sentencing hearing, Delgado-Ruiz' counsel conceded that Delgado-Ruiz' crime of felony menacing met the definition of crime of violence and stated that he did not disagree with the designation of such a crime as a crime of violence. See Tr. at 4:21-23 ("But I think that the elements to felony menacing in my mind dissipate any doubt that it meets the definition of a crime of violence under the Guidelines")(Nieto); id. at 5:6-7 ("But I don't disagree with the Court's assessment on the designation [of felony menacing] as a crime of violence.")(Nieto). Instead, Delgado-Ruiz requests that the Court vary downward, under the factors set forth in 18 U.S.C. § 3553(a), from the Guideline range set forth in the PSR. See Sentencing Memorandum at 6-7; Tr. at 12:1-6 (Nieto).

Delgado-Ruiz' base criminal offense level is 8. See PSR ¶ 10, at 4. The PSR assessed him a 16-level enhancement pursuant to U.S.S.G. § 2L1.2 because of his conviction for a crime of violence. See PSR ¶ 11, at 4-5. Delgado-Ruiz received a 3-level adjustment for acceptance of responsibility. See PSR ¶ 16, at 5. Delgado-Ruiz' total criminal offense level is thus 21. See PSR ¶ 17, at 5. His criminal history category is III. See PSR ¶ 23, at 8. Accordingly, Delgado-Ruiz' Guideline sentence range is 46 to 57 months. See id. ¶ 41, at 11.

## LAW REGARDING GUIDELINE SENTENCES

While a Guideline sentence is advisory, the sentencing court must still correctly calculate the Guideline sentence before considering whether to vary from that sentence. In this case, the parties do not dispute that the Court should apply the categorical approach to determine whether

Delgado-Ruiz' prior conviction for felony menacing is a crime of violence under the Guidelines. See United States' Response at 2; Sentencing Memorandum at 3. The primary issue is whether the crime's elements include a threat of physical force or whether Delgado-Ruiz admitted to such an element in his plea agreement.

    1.    **Law Regarding Interpretation of Guideline Language.**

Generally speaking, the Sentencing Guidelines are interpreted according to accepted rules of statutory construction. See United States v. Robertson, 350 F.3d 1109, 1112 (10th Cir. 2003). In interpreting a Guideline, the language in the Guideline itself, as well as the interpretative and explanatory commentary to the Guideline provided by the Sentencing Commission, should be looked at and reviewed. "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." United States v. Torres-Ruiz, 387 F.3d 1179, 1181 (10th Cir. 2004)(internal citations and quotations omitted).

    2.    **Law Regarding Sentencing for Re-Entry Crimes.**

Section 2L1.2(a) of the United States Sentencing Guidelines provides for a base-offense level of 8 for re-entry after deportation. See U.S.S.G. 2L1.2(a). U.S.S.G. § 2L1.2(b)(1)(A)(ii) requires a 16-level enhancement "[i]f the defendant previously was deported . . . after . . . a conviction for a felony that is . . . a crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). The application notes to U.S.S.G. § 2L1.2 define a "crime of violence."

> "Crime of violence" means any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2 Cmt. n. 1(B)(iii)(emphasis added).

-6-

3.    **The Categorical Approach.**

In a series of cases, the Supreme Court of the United States has provided guidance to sentencing courts on how to determine whether a defendant has been convicted of a "violent felony" under the Armed Career Criminal Act ("ACCA").   In the first case, Taylor v. United States, 495 U.S. 575 (1990), the Supreme Court considered whether sentencing courts may examine evidence beyond the statutory definitions of a conviction to determine if it satisfies the predicate-crime requirement.  See id. at 600.  Recognizing that states often employ varying definitions for crimes, the Supreme Court held that sentencing courts must use the "categorical approach" in determining whether a state conviction for "burglary" constitutes an ACCA predicate offense, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions. Id.

Furthermore, in United States v. Sanchez-Garcia, 501 F.3d 1208 (10th Cir. 2007), the Tenth Circuit held that "[t]o determine whether a prior offense is a crime of violence under § 16(b), we apply the categorical approach outlined in Taylor v. United States." Id. at 1211 (internal citations and quotations omitted).  Under this approach, the Tenth Circuit examines "only the elements of the statute of conviction and disregard[s] the specific factual circumstances underlying the defendant's prior offense." United States v. Sanchez-Garcia 501 F.3d at 1211 (citing United States v. Lucio-Lucio, 347 F.3d 1202, 1204 (10th Cir. 2003).  "Accordingly, for a prior offense to be a crime of violence under § 16(b), the 'substantial risk' of 'physical force' must inhere in the elements of the prior offense rather than from the specific conduct in which the defendant engaged." United States v. Sanchez-Garcia 501 F.3d at 1211 (citing United States v. Frias-Trujillo, 9 F.3d 875, 877 (10th Cir. 1993)("There is no indication that Congress intended that a particular crime might sometimes count towards enhancement and sometimes not, depending on the facts of the case.")(internal quotations

omitted).  While the court is prohibited from examining the underlying factors of the charged crime, it "may take into account certain records of the prior conviction, such as the charging document and comparable judicial records, if the statutory definition of the prior offense is 'ambiguous on its face because it reaches different types of conduct under different sets of elements.'"  United States v. Sanchez-Garcia 501 F.3d at 1211 (quoting United States v. Venegas-Ornelas, 348 F.3d 1273, 1275 n.1).  This examination does not involve "a subjective inquiry as to whether [the] particular factual circumstances [underlying the conviction] involve a risk of violence."  McCann v. Rosquist, 185 F.3d 1113, 1117 n.4 (10th Cir. 1999), vacated on other grounds, 529 U.S. 1126.  Rather, the court "simply examine[s] these documents to determine which 'part of the statute was charged against the [d]efendant' and thus 'which portion of the statute to examine on its face.'"  United States v. Sanchez-Garcia 501 F.3d at 1211 (quoting United States v. Venegas-Ornelas, 348 F.3d at 1275 n.1.)

The purpose of the categorical approach is to avoid conducting "a fact finding inquiry, thereby sparing [the sentencing court] from conducting mini-trials on prior offenses which have already been adjudicated."  United States v. Austin, 426 F.3d 1266, 1270 (10th Cir. 2005).  See Taylor v. United States, 495 U.S. 575, 601 (1990)("[T]he practical difficulties and potential unfairness of a factual approach are daunting.").  Under the categorical approach, courts should look "only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions."  Taylor v. United States, 495 U.S. at 600.  Sentencing courts, moreover, should steer clear of the "exact definition or label" of the conviction, and instead should focus on the "basic elements" of the conviction.  Id. at 599.  If the statutory elements are consistent with the generic elements of a crime of violence, then the conviction satisfies a violent felony.  See id. at 599-600.

In two subsequent cases, the Supreme Court has reaffirmed this approach.  In Shepard v. United States, 544 U.S. 13 (2005), the Supreme Court applied the categorical approach for

-8-

convictions based on guilty pleas and, not only on convictions after a trial.  See id. at 23.  And recently, in James v. United States, 127 S.Ct. 1586 (2007), the Supreme Court reaffirmed the categorical approach under the ACCA, applying it to convictions for attempted burglary.  See id. at 1593-94.  In James v. United States, the Supreme Court reasoned that the categorical approach does not require that "every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony."  Id. at 1597.

> [T]he proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another. One can always hypothesize unusual cases in which even a prototypically violent crime might not present a genuine risk of injury . . . . But that does not mean that the offense[] . . . [is] categorically nonviolent.

Id.

The fact of conviction is the important factor in assessing the application of the categorical approach.  In a "narrow range of cases," however, the Supreme Court authorized looking beyond the statutory elements of a conviction.  Taylor v. United States, 495 U.S. at 602.  First, "where a statute is ambiguous (i.e., reaches different types of conduct) and a defendant's conviction followed a jury trial, the court may look to charging documents and jury instructions to determine if the actual offense the defendant was convicted of qualifies as a crime of violence."  United States v. Moore, 420 F.3d 1218, 1220 (10th Cir. 2005)(citing Taylor v. United States, 495 U.S. at 602).  Second, "[w]here the statute is ambiguous and the defendant was convicted by a guilty plea, the court can review the charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."  United States v. Moore, 420 F.3d at 1220 (citing Shepard v. United States, 544 U.S. at 16).

Generally, in determining whether a prior conviction was for a "crime of violence" under

U.S.S.G. § 2L1.2, the "categorical approach" is used.  United States v. Martinez-Hernandez, 422 F.3d 1084, 1086-87 (10th Cir. 2005).  This categorical approach entails looking at "the elements of the [state] statute under which [the defendant] had been convicted," id. at 1086, to determine whether those elements require "the use, attempted use, or threatened use of physical force against the person of another." Id.

The recent case of United States v. Perez-Vargas, 414 F.3d 1282 (10th Cir. 2005), sets out the Tenth Circuit's analysis in cases with enhancements based on statutes that are unclear regarding the element of force.  The Tenth Circuit in United States v. Perez-Vargas cited to  the Supreme Court of the United States' opinion in Taylor v. United States, 495 U.S. 575 (1990), and stated that, in applying Taylor v. United States, the Tenth Circuit has held that,  "if the statute is ambiguous, or broad enough to encompass both violent and nonviolent crimes, a court can look beyond the statute to certain records of the prior proceeding such as the charging documents, the judgment, any plea thereto, and findings by the [sentencing] court." United States v. Perez-Vargas, 414 F.3d at 1284 (internal citations and quotations omitted) .  The Tenth Circuit in United States v. Perez-Vargas also quoted Shepard v. United States, 125 S.Ct. 1254 (2005), stating that, "when determining whether a prior conviction resulting from a guilty plea is a violent felony, a court is limited to an examination of the language of the statute of conviction, and, if it is ambiguous, 'the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant . . . or to some comparable judicial record of this information.'" United States v. Perez-Vargas, 414 F.3d at 1284 (quoting Shepard v. United States, 125 S.Ct. at 1262).

Thus, if a sentencing court determines from the statutory definitions of convictions that the crime is a felony and includes the use or threatened use of force, the inquiry ends, and the crime is categorized as one of violence.  See United States v. Taylor, 495 U.S. at 600-601. If the statute is

ambiguous, the supporting documents approved in <u>United States v. Taylor</u> and <u>Shepard v. United States</u> are reviewed to determine if there was a qualifying conviction for a crime involving the use or threatened use of violence.  <u>See</u> <u>United States v. Dwyer</u>, 245 F.3d 1168, 1171 (10th Cir.2001); <u>Shepard v. United States</u>, 125 S.Ct. at 1259.  While <u>United States v. Taylor</u> and <u>Shepard v. United States</u> involved burglary convictions and pleas, the Tenth Circuit has applied the categorical approach to a broader array of issues.  <u>See</u>, <u>e.g.</u>, <u>United States v. Moore</u>, 420 F.3d 1218, 1220 (10th Cir. 2005)(applying categorical approach to U.S.S.G. § 4B1.2 "crime of violence" enhancement); <u>United States v. Begay</u>, 470 F.3d 964, 967-75 (10th Cir. 2005)(applying categorical approach in holding that a DUI is a "violent felony" under the ACCA), <u>cert. granted</u>, 128 S.Ct. 32 (2007); <u>United States v. Harris</u>, 447 F.3d 1300, 1304-1305 (10th Cir. 2006)(applying categorical approach to ACCA "separateness of prior crimes" inquiry); <u>United States v. Nevels</u>, 490 F.3d 800, 807-808 (10th Cir. 2007)(applying categorical approach to juvenile convictions).

<u><b>COLORADO REVISED STATUTE § 18-3-206</b></u>

Colorado Revised Statute § 18-3-206 provides:

**§ 18-3-206. Menacing**

 (1) A person commits the crime of menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury. Menacing is a class 3 misdemeanor, but, it is a class 5 felony if committed:

(a) By the use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon; or

(b) By the person representing verbally or otherwise that he or she is armed with a deadly weapon.

Colo. Rev. Stat. § 18-3-206.  In <u>United States v. Herron</u>, 432 F.3d 1127 (10th Cir. 2005), Herron argued that the district court erred in ruling that a violation of the Colorado menacing statute

qualified as a violent felony under the ACCA.  See id. at 1137.  The Tenth Circuit held that a

violation of the Colorado menacing statute qualified as a violent felony under the ACCA.  See id.

at  1137-38.

      The Tenth Circuit in United States v. Herron noted that the ACCA defines a violent felony

as:

> [A]ny crime punishable by imprisonment for a term exceeding one year, or any act
> of juvenile delinquency involving the use or carrying of a firearm, knife, or
> destructive device that would be punishable by imprisonment for such term if
> committed by an adult, that -- (i) has as an element the use, attempted use, or
> threatened use of physical force against the person of another; or (ii) is burglary,
> arson, or extortion, involves use of explosives, or otherwise involves conduct that
> presents a serious potential risk of physical injury to another.

United States v. Herron, 432 F.3d at 1137 (citing 18 U.S.C. § 924(e)(2)(B)). The key phrase in

Herron's case was "threatened use of physical force." Id.  The Tenth Circuit noted that "[t]he actual

use of force is not necessary to make a crime a violent felony; all that is required is the threat of such

force against another's person."  Id.

      The Tenth Circuit in United States v. Herron used the formal-categorical approach, "looking

only to the statutory definitions of the prior offenses, and not to the particular facts underlying those

convictions." Id.  (internal citations and quotations omitted). The Tenth Circuit noted that the

Colorado menacing statute reads:

> A person commits the crime of menacing if, by any threat or physical action, he or
> she knowingly places or attempts to place another person in fear of imminent serious
> bodily injury. Menacing is a class 3 misdemeanor but, if committed by the use of
> a deadly weapon it is a class 5 felony.

Id. (quoting Colo. Rev. Stat. § 18-3-206).  The Court also noted that the Colorado Criminal Code

defines "serious bodily injury" as

> bodily injury which, either at the time of the actual injury or at a later time, involves
> a substantial risk of death, a substantial risk of serious permanent disfigurement, a

substantial risk of protracted loss or impairment of the function of any part or organ
of the body, or breaks, fractures, or burns of the second or third degree.

United States v. Herron, 432 F.3d at 1137-38 (quoting § 18-1-901(p) (2003)).

The Tenth Circuit in United States v. Herron thus held that the defendant's convictions "were undoubtably for violent felonies," because he "knowingly place[d] or attempt[ed] to place another person in fear of imminent serious bodily injury . . . by the use of a deadly weapon." United States v. Herron, 432 F.3d at 1138 (quoting Colo. Rev. Stat. § 18-3-206). The Tenth Circuit held that the defendant's conduct "easily satisfies the requirement of 'the threatened use of physical force against the person of another,' under the ACCA." United States v. Herron, 432 F.3d at 1138 (quoting 18 U.S.C. § 924(e)(2)(B)(i)).

## LAW REGARDING VARIANCES FROM ADVISORY GUIDELINE SENTENCES UNDER UNITED STATES V. BOOKER

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court severed the mandatory provisions from the Federal Sentencing Act, thus making the Guidelines effectively advisory. In excising the two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

-13-

(D) to provide the defendant with needed educational or vocational training, medical
care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D).  See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty
of an offense described in any Federal statute  . . .  shall be sentenced in accordance with the
provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D)
of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the
case.").  To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i)
the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available
sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes;
and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the Tenth
Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C.
§ 3553(a), they are entitled to considerable deference.  See Rita v. United States, 127 S. Ct. 2456,
2464 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined
tens of thousands of sentences and worked with the help of many others in the law enforcement
community over a long period of time in an effort to fulfill [its] statutory mandate."); United States
v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor
among many").  They are significant, because "the Guidelines are an expression of popular political
will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen
years' worth of careful consideration of the proper sentence for federal offenses."  United States v.
Cage, 451 F.3d at 593 (internal quotations omitted).  A reasonable sentence is one that also "avoid[s]
unwarranted sentence disparities among defendants with similar records who have been found guilty
of similar conduct." 18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006).  This presumption, however, is an appellate presumption, not one that the trial court can or should apply.  See Rita v. United States, 127 S. Ct. at 2463; Gall v. United States, 128 S.Ct. 586, *591 (2007); Kimbrough v. United States, 128 S.Ct. 558, 564 (2007).  Instead, the trial court must undertake the § 3553(a)  balancing of factors without any presumption in favor of the advisory Guideline sentence.  See Rita v. United States, 127 S. Ct. at 2463; Gall v. United States, 128 S.Ct. at *591; Kimbrough v. United States, 128 S.Ct. at 564.

## ANALYSIS

The Court concludes that, based on the elements of the state crime of felony menacing and the plea agreement in the state court, the prior conviction is a crime of violence under the Guidelines.  The Court believes however, that the factors in 18 U.S.C. § 3553(a) counsel for a variance from the Guideline sentence in Delgado-Ruiz' case.  The Court believes that a sentence of 39-months incarceration is sufficient, without being greater than necessary, to comply with the goals of the Sentencing Reform Act.

## I.   THE COURT WILL OVERRULE DELGADO-RUIZ' OBJECTION TO THE 16-LEVEL ENHANCEMENT.

U.S.S.G. § 2L1.2(a) provides for a base offense level of 8 for re-entry.  See U.S.S.G. § 2L1.2(a).  An enhancement of 4 levels is added when a defendant has had a felony conviction before deportation.  See U.S.S.G. § 2L1.2(b)(D). Thus, Delgado-Ruiz would be at a level 12 absent the enhancement factors set forth in subsection (a) of § 2L1.2 for having a prior conviction for a "crime of violence."  Sentencing Memorandum at 2. Delgado-Ruiz' sentence should  be enhanced by 16 levels only if his prior felony conviction satisfies the definition of a "crime of violence."  U.S.S.G.

§ 2L1.2(b)(A).

If the Colorado menacing statute under which Delgado-Ruiz was convicted was called "Aggravated Assault," it would constitute a "listed crime" and might then apply as a "crime of violence" without containing an element of the use of physical force against the person of another as described in the Commentary of U.S.S.G. § 2L1.2.  U.S.S.G. § 2L1.2 app. n. 1(b)(iii).  The statute, therefore, must require the use or attempted use or threatened use of force against the person of another to fit within the definition of a "crime of violence," and thus warrant the imposition of the 16-level enhancement.

In his Sentencing Memorandum, Delgado-Ruiz concedes that the requirement of "physical action" for "felony menacing" may satisfy the "use of force" requirement.   Sentencing Memorandum at 2-3.  Delgado-Ruiz nevertheless contends that the felony-menacing statute could cause a conviction for doing an act that does not require the actual use of or threatened use of force.  See id. at 4.  Delgado-Ruiz argues that, for example, an object could be placed in a location that may cause harm if the victim comes in contact with it without use of force by defendant upon the victim.  See id.

Delgado-Ruiz concedes that there are other statutes that describe the harm caused to a victim rather than an action by a defendant and that require less proof of use of force than the felony menacing statute.  See id.  Delgado-Ruiz suggests, however, that this felony menacing statute may be ambiguous to the degree that the Tenth Circuit contemplated in United States v. Perez-Vargas.  See Sentencing Memorandum at 4.  Delgado-Ruiz asks the Court to scrutinize this felony-menacing statute before allowing it to form the basis of such an extreme increase in the number of levels in his Guideline calculation.   See id.  Delgado-Ruiz contends that, if the Court determines that the felony menacing statute does not satisfy the level of scrutiny that United States v. Taylor and United

-16-

States v. Perez-Vargas require, the Court should not impose a 16-level increase, and that Ruiz'
Guideline range should be at level 10 after the 2-level reduction for acceptance of responsibility.
See Sentencing Memorandum at 4.

Despite Delgado-Ruiz' arguments in his Sentencing Memorandum, at  the sentencing
hearing, Delgado-Ruiz' counsel conceded that Delgado-Ruiz' crime of felony menacing met the
definition of crime of violence and did not disagree with the designation of such a crime as a crime
of violence.  See Tr. at 4:21-23 ("But I think that the elements to felony menacing in my mind
dissipate any doubt that it meets the definition of a crime of violence under the Guidelines")(Nieto);
id. at 5:6-7 ("But I don't disagree with the Court's assessment on the designation as a crime of
violence.")(Nieto).

The Court is in agreement with Delgado-Ruiz' counsel that felony menacing is a crime of
violence.  Furthermore, when the Court reviews the appropriate Shepard v. United States documents,
those documents also support the finding that the felony was a crime of violence.  See United States'
Response, Exhibit 1.  The Tenth Circuit's opinion in United States v. Perez-Vargas gives the Court
guidance in how to approach the application of the Guidelines in this case.  See  414 F.3d at 1284-
85.  The question is whether the Court has adequate evidence under Taylor v. United States, upon
which to base the 16-level enhancement or "if the statute is ambiguous, or broad enough to
encompass both violent and nonviolent  crimes," allowing a court to "look beyond the statute to
certain records of the prior proceedings such as the charging documents, the judgment, any plea
thereto, and findings by the [sentencing] court." United States v. Perez-Vargas, 414 F.3d at 1284.
Because the Court finds the statute to be ambiguous, the Court must therefore rely only upon
appropriate court documents and not upon other documents, including police reports, to make its
determination.

-17-

The Court believes that, when it reviews the plea documents for the felony menacing conviction, Delgado-Ruiz admitted all elements of that crime charged. <u>See</u> Sentencing Memorandum, Exhibit 1 ¶ 7, at 2. Those elements include "by threat and physical action and by use of a deadly weapon, to wit: beer bottle, did unlawfully, feloniously and knowingly place and attempt to place Uriel Ramirez in fear of imminent serious bodily injury." <u>Id.</u> at 3. Delgado-Ruiz was, therefore, convicted of a crime of violence. Accordingly, the Court will overrule any objection to the 16-level enhancement.

## II.    THE COURT WILL VARY FROM THE ADVISORY GUIDELINE SENTENCE AND SENTENCE DELGADO-RUIZ TO 39-MONTHS IMPRISONMENT.

Delgado-Ruiz argues in his Sentencing Memorandum that the Court may impose a sentence that does not contain the 16-level enhancement. <u>See</u> Sentencing Memorandum at 4. Delgado-Ruiz argues that the enhancement is not required to satisfy the factors set forth in 18 U.S.C. § 3553, which the Court must consider and apply to determine a reasonable sentence under the mandate of <u>United States v. Booker</u>, 124 S.Ct. 738, 757 (2005). <u>See</u> Sentencing Memorandum at 4. While the Court believes that it has accurately calculated Delgado-Ruiz' Guideline sentence, the Court will consider Delgado-Ruiz' arguments against the finding that his felony-menacing conviction was a "crime of violence" in its <u>Booker</u> analysis.

Delgado-Ruiz contends that, under the factors set forth in 18 U.S.C. § 3553(a), it would be appropriate for the Court to vary downward from the Guideline range set forth in the PSR and to impose a sentence at the low end of the Guideline range that the Court finds appropriate. <u>See</u> Sentencing Memorandum at 5-6. At the sentencing hearing, Delgado-Ruiz' counsel requested a variance that would impose a sentence of 10 to 15 months. <u>See</u> Tr. at 11:22-25 (Nieto). Delgado-Ruiz' counsel also asked the Court to consider the facts of the felony-menacing conviction and to

specifically take into consideration Delgado-Ruiz' explanation of what happened, the letters written to the Court, that Delgado-Ruiz has had very limited involvement with the criminal justice system, and that he is a hard worker who came to the United States to establish a better life for his family in Mexico.  See Tr. at 8:7-10:18 (Nieto).   Because the Court believes that the circumstances of Delgado-Ruiz' case counsel for a variance, the Court will grant Delgado-Ruiz' request for a variance and sentence him to 39-months imprisonment.

The Court has fully considered the applicable sentencing range based upon the United States Sentencing Guidelines.  In arriving at Delgado-Ruiz' sentence, however, the Court has taken account not only of the Guidelines but other sentencing goals.  Specifically, the Court has considered the Guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant, and the Court believes that, because of two or three factors in the 18 U.S.C. § 3553(a) analysis, the punishment that is set forth in the Guidelines is not appropriate for Delgado-Ruiz and for the offense for which he is being convicted.  A sentence of 46 or more months, or even a sentence of 40 months, seems slightly high for Delgado-Ruiz.  On the other hand, while the Court believes the Guideline sentence is slightly high, the Court does not believe that Delgado-Ruiz is entitled to the amount of variance he is requesting because the Court needs to give great weight to Congress' enhancement for a crime of violence.  The circumstances present, however, undercut the need for a full 16-level enhancement, and thus some adjustment is appropriate.

The Court takes into consideration the circumstances of the conviction for the crime of violence, that Delgado-Ruiz would be very close to a criminal history of II had he not committed this federal crime while under a prior criminal justice sentence and had 2 additional points added to his criminal history score, and that less deterrence may need to be applied in this case because

Delgado-Ruiz' family is in Mexico.  Because Delgado-Ruiz' family is in Mexico, the Court believes that Delgado-Ruiz is less likely, after some incarceration, to return to the United States and to be away from his family.

Those three factors justify some variance in this case.  The Court does not believe, however, that a reduction down to a sentence of 10 to 15 months is warranted, because such a sentence would not in a meaningful way reflect Congress' intent of punishing more severely those who have prior convictions for crimes of violence.  A sentence consistent with a criminal offense level of 18 and a criminal history score of III is more appropriate in this case.  Thus, the Guideline range in accordance with a criminal offense level of 18 and a criminal history score of III would be 33 to 41 months.  A sentence within this range is reasonable for Delgado-Ruiz.  A sentence of 39 months reflects the seriousness of the offense, promotes respect for the law, and provides Delgado-Ruiz just punishment and adequate deterrence.  A sentence of 39 months also protects the public and is sufficient, without being greater than is necessary, to comply with the purposes of punishment set forth in the Sentencing Reform Act.

The Court does not believe it is appropriate to uphold the 16-level enhancement and then completely ignore the reasons for the 16-level enhancement when conducting its <u>Booker</u> analysis. The Court has considered the circumstances of Delgado-Ruiz' crime of violence and has calculated a sentence that reflects a less serious crime of violence than that which Congress may have had in mind when it crafted the 16-level enhancement.  Thus, while the Court takes into consideration Congress' intent to impose harsh collateral consequences to immigration offenses, the Court believes that a variance to 39 months more effectively promotes the sentencing goals outlined in 18 U.S.C. § 3553(a) than would an advisory Guideline sentence.

**IT IS ORDERED** that the objections in the Defendant's Sentencing Memorandum are

overruled, and the request for a variance from the advisory Guideline sentence is granted.  Delgado-

Ruiz is sentenced to 39-months imprisonment.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Larry Gomez
  Acting United States Attorney
Rhonda P. Backinoff
  Assistant United States Attorney
Albuquerque, New Mexico

> *Attorneys for the Plaintiff*

Arturo B. Nieto
Albuquerque, New Mexico

> *Attorney for the Defendant*